SARAH L. LARIMER, *et al.*, v. FANNY KELLEY.

[FIRST CASE.]

1. MARRIED WOMEN; *Contracts.* Coverture does not render void any contract made by a woman for her personal services and labor. The statute authorizes any married woman to perform labor and services on her sole and separate account, and makes the earnings therefrom her sole and separate property. If she can perform labor and services on her separate account, she can contract for them. If she performs them she can recover for them.

2. STATUTE OF FRAUDS; *Pleading; Parol Contract.* In an action to recover damages for breach of a contract an answer alleging that the supposed contract set forth in the petition was not to be performed within one year from the making thereof, and was not in writing, nor evidenced by any note or memorandum signed by the defendants or any person thereunto authorized, is sufficient; and a demurrer thereto should be overruled.

3. ————— It is not necessary in such answer to make a formal admission of the contract.

4. PLEADING; *Inconsistent Defenses.* An objection to one defense that is inconsistent with and contradictory to another cannot be raised by demurrer.

[SECOND CASE.]

5. PAROL CONTRACT; *Terms of; Performance of; Statute of Frauds.* A parol contract which is capable of entire performance within one year, and is by agreement to be performed as speedily as possible, is not within that clause of the Statute of Frauds which prevents an action "upon any agreement that is not *to be* performed within the space of one year from the making thereof," even though it may not in fact be fully performed within the year.

6. ————— *Pleading; Statute of Frauds.* Where a petition is filed alleging a parol contract, which upon its face appears capable of entire and easy performance within one year, but without alleging when such contract was to be performed, and to such petition an answer is filed alleging in the words of the statute that such contract was "not to be performed within one year," and was therefore void, a reply which alleges that the contract was capable of entire performance within one year, and was by agreement of the parties at the time to be performed as speedily as possible, must be held good in demurrer.

7. ATTACHMENT AGAINST NON-RESIDENTS; *Change of Domicile.* Where defendants are non-residents of the state, and upon that ground an attachment is rightfully issued without any undertaking, and rightfully levied, such defendants cannot, by subsequently becoming residents, have such order of attachment set aside, or an undertaking given.

## *Error from Allen District Court.*

ACTION by Mrs. *Kelley*, a married woman, against Mrs. *Larimer* and husband. Five defenses were set up in the answer, to three of which the district court sustained a demurrer. Trial on the other issues at the March Term 1872, and verdict and judgment for plaintiff. The defendants bring the case here on error. The averments of the petition, the several defenses thereto, and a sufficient statement of the facts and proceedings, are given in the opinion.

As the case here is disposed of upon the questions arising upon the demurrer, it is not necessary to state the evidence, or the instructions of the district court.

*McComas & McKeighan,* for plaintiffs in error:

1. The demurrer to the answer setting up the coverture of Mrs. Larimer should have been overruled. The incapacity of a married woman to contract is the general rule. Bishop on the Law of Married Women, § 39. Any form of contract she may make is, as to her, a mere nullity. 6 Hill, 242; 5 Paige, 509; 16 Johns., 281. This is the general rule. If this case forms an exception it should have been so pleaded. (*Wooster v. Northrup,* 5 Wis., 245.) But the averments of the answer show that this case does not come within any of the exceptions of our statute: Ch. 62, page 562. It is only in reference to *her separate estate* she may contract as *feme sole;* (§ 2.) It is only in reference to a liability *thus* created that she may sue and be sued; (§ 3.)

2. The court erred in sustaining the demurrer to the plea of the statute of frauds. The answer sets up that this supposed contract was not in writing, and was "not to be performed in one year." The general issue also raises the statutes of frauds. (Brown on Frauds, 494, § 511.)

3. The court erred in refusing the instructions asked for the defendants, in substance that the manuscript prepared by these ladies was the capital stock of the partnership, and that the plaintiff could not recover the value of her interest in it in this form of action. This could only be refused on the ground that this was an action of tort. But the court had already instructed the jury that "the measure of damages in this case is the prospective profits of the partnership." Can the case be an action on contract one moment, and an action for tort the next?

4. The court erred in overruling the objection of the defendants to the introduction of any evidence in this case, on the ground the *petition* did not state facts sufficient to constitute a cause of action. The contract set out in the petition is void

for uncertainty. These two ladies were to write "a book." When? The contract does not say. Mrs. Larimer was to furnish the money to pay for printing it. How much money? How many pages were there to be in the book? What style of binding? How large an edition? All these questions were to be afterwards settled, if at all, for the contract does not settle them. Until they are answered how can we tell how much money Mrs. L. was to furnish? They were to share the profits equally, but suppose the expenses exceeded the profits, what then? Upon this point see 44 N. Y., 79; 4 Chand., 29; 3 Wis., 323.

5. The court erred in admitting improper evidence upon the question of damages. All the evidence upon this subject is in depositions copied into the case, and the court certifies that the record contains *all* the evidence upon this subject. There is it seems to us a fatal objection to all this testimony. Each one of the witnesses is shown Mrs. Kelley's book entitled "*My* Captivity, or Life among the Sioux." They are then asked what such a book would have been worth if it had been published in 1865 or immediately after the "thrilling and romantic events" to which it relates occurred? And they give the stereotyped answer "ten thousand dollars," and then say it was not worth over half as much when it was published. The jury assess Mrs. Larimer with $5,000, and return their verdict accordingly. But what has all this evidence to do with "the prospective profits of the partnership?" The petition does not aver that Mrs. Larimer ever had anything to do with *this* book. The suit is about *another* book. Was not the real question this: What would such a book as these ladies agreed to write be worth if it had been published in May 1869, when the plaintiff says in her petition they had it nearly ready for publication? Get this value, deduct the expenses of publishing, and you have the plaintiff's "share of the profits," or "the prospective profits of the partnership." Upon *this* question there is no evidence in the record. The damages found by the jury are not only excessive, but

without any evidence to sustain a verdict for more than nominal damages. Sedg. on Damages, 93.

6. We have considered this as an action on contract; but suppose it is *tort:* what then becomes of all the plaintiff's evidence upon the question of damages, and how is one partner to maintain such an action against the other in trover? The measure of damage in trover is the value of the thing converted with interest; (Sedgwick, 546, 547.) But trover will not lie by one partner against the other for the conversion of partnership property; (2 Greenl. Ev., § 564.) Nor by one joint tenant against another, unless the thing (the subject of the tenancy) is entirely destroyed. 1 Chitty Pl., 156.

*W. A. Johnson,* for defendant in error :

1. The "case" as it appears in the record cannot be considered. The case as originally made was signed and filed June 17th. On the 24th of June, after the case had been filed with the clerk of said court, the plaintiffs in error presented to the district judge, at chambers, an amendment which they desired to be made to the made case. To the allowance and signing the amendment, so presented, the defendant in error filed with the judge her written objections. A made case must contain a statement of so much of the proceedings, and evidence, or other matters, in the action, as may be necessary to present the error complained of. Code, § 547. The time of service, and of amendments, is prescribed by § 1, ch. 114, Laws of 1871. After the case has been settled by the judge, and filed with the clerk, the power of the district judge is fully exhausted. There is no authority for the judge to order any amendments, after he has settled and signed it. This court can consider only such matters as are presented in the original case, as made, settled, and signed by the judge, and filed with the clerk.

2. A married woman may, while married, carry on any trade or business in the same manner as though she were sole. Ch. 62, Gen. Stat., 563, § 4. She may while married, bind herself in her own individual name, or she may enter into a

contract in connection with her husband. A married woman may sue and be sued in the same manner as if she was unmarried. Code, § 29.

3. The court did not err in sustaining the demurrer of the plaintiff below to the fifth defense. Said defense does not admit the making of an agreement. Before the defendants below could set up the statute of frauds, they must admit the contract, and then show that it was void by the provisions of the statute. A plea in avoidance cannot be interposed until a confession of the agreement has been made. 1 Chitty's Pl., 526; Stephen's Pl., 199, 201.

4. The petition of plaintiff below contains a statement of facts constituting a cause of action. To the petition the defendants filed an answer, with five several defenses, three of which were demurred to by plaintiff, and the demurrer was sustained, leaving two defenses — a general denial, and a special denial of partnership — on which case was tried. After a trial upon the merits it is too late to contend that the petition does not state facts sufficient to constitute a cause of action.

5. In the case made is the following: "I hereby certify that the case contains all the evidence which tends to show the damages resulting to the plaintiff by reason of the alleged wrongful acts of the defendants; also, that this case contains all the evidence tending to show that the defendant William J. Larimer was party to the alleged contract or the alleged breach thereof; but there was admitted evidence on all other points involved in the issues in this case." The supreme court will not review the findings and judgment of the court below on the facts under a case or bill of exceptions which states that the evidence is given in substance, and that no other material evidence was heard by the court. 22 Iowa, 408, 441; 27 Iowa, 254; 29 Iowa, 537.

The opinion of the court was delivered by

BREWER, J.: The petition filed by defendant in error alleged in substance that in July 1864 Mrs. Kelley and Mrs.

Larimer, the parties hereto, were taken captive by the Sioux Indians; that both escaped, Mrs. Larimer in forty-eight hours, and Mrs. Kelley after five months; and afterward, and in December 1865, in Johnson county, Kansas, they entered into an agreement to prepare a statement of their experiences in captivity, and publish the same with the names of both appearing as the authors. The expenses of the publication were to be borne by Mrs. Larimer, and the profits equally divided; that in May 1869, when the manuscript was nearly completed, Mrs. Larimer secretly and fraudulently took possession thereof, carried it to Philadelphia, and there published it in her own name, and·as her own work, thereby depriving Mrs. Kelley of the credit and reputation of such authorship, and her share of the profits of such publication; that the other defendant, William J. Larimer, conspired with Mrs. Larimer in thus defrauding plaintiff of her rights, and aided and abetted and counseled in the commission of such' fraudulent acts. To this petition was filed an answer, setting up five defenses: 1st, a general denial; 2d, a specific denial of any agreement or partnership, verified by the affidavit of Mrs. Larimer; 3d, an averment that at the ·time of the alleged agreement Mrs. L. was the wife of her co-defendant, and had no trade, business or property on her sole account, and had no earnings from any such trade or business, or the performance of any labor or services, and was incapable of making any, such contract, and was not authorized thereto by her husband; 4th, that plaintiff was at the same time a married woman, and incapable of such contract; 5th, that the alleged arrangement was not to be performed within one year, and was not in writing, nor evidenced by any note or memorandum signed by defendants, or any person thereunto authorized. To these last three defenses a several demurrer on the ground of insufficiency was filed, and sustained by the court; and the rulings on this demurrer present the first question for our consideration.

The third and fourth defenses are, that a *feme covert* cannot make a contract such as is set forth in the petition. That

contract is one for labor. Each is to furnish her skill and knowledge, her time and labor, in the production of a book. The nature of the contract is the same, whether the object sought is the production of a book, or the fencing of a farm. Each is a contract for labor and services. The married woman's act of 1859, the law in force at the time of this contract, (Comp. Laws, p. 698, § 10,) authorizes any married woman to perform any labor or services on her sole and separate account, makes the earnings therefrom her sole and separate account, and declares that she may sue and be sued, as if sole, in regard to such labor, services, and earnings. If she can perform labor and services on her separate account, she can contract for them. If she performs them, she can recover for them. The coverture of the parties did not therefore avoid their contract, and the demurrer to the third and fourth defenses was properly sustained.

*1. Contracts by married women.*

The fifth defense presents a question under the statute of frauds. Sec. 5 of that act, (Comp. Laws, 569,) is thus:

"Sec. 5. No action shall be brought, whereby to charge the defendant * * * upon any agreement that is not to be performed within the space of one year from the making thereof, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized."

The pleader has in this fifth defense used the very language of this section, and has thereby alleged that which, if true, constitutes a perfect defense to an action for a breach of such an agreement. The law declares that no action can be maintained on an agreement that is not *to be* performed within one year, unless such agreement is evidenced by some writing. The pleader alleges that this agreement was not and was *not to be* performed within a year, and that there were no writings. Does not that bring the case within the statute? But it is said by counsel for defendant in error that this fifth defense is insufficient "because

*2. Statute of Frauds; contracts.*

before the defendants below could set up the statute of frauds
**3. Admission not necessary.** they must admit the contract, and then show that
it was void by the provisions of the statute. A
plea in avoidance cannot be interposed until a confession of
the agreement has been made." If counsel mean by this to
claim that this defense must contain a formal admission of
the making of the agreement set forth in the petition before
alleging that it was void by the statute, we think they mis-
take the rules of code pleading. Whether the allegation,
that the supposed agreement was void, is an implied admission
that such an agreement was made, so as to avoid the necessity
of proof, may or may not be correct. Whether correct or
not, it does not determine the sufficiency of this defense. All
that the defendant need state is his defense. The petition
alleges an agreement. The defense is that such agreement
was void. Is it not enough to allege, that the supposed
**4. Pleading; contradictory defenses.** agreement set forth in the petition was void, and
why? We think it states the defense, and is
therefore enough. If counsel mean to claim that it is insuffi-
cient because contradictory to the second and verified defense,
and that contradictory defenses are not tolerated, this answer
is complete: such objection cannot be raised by demurrer.
The question on demurrer is, whether this defense be suffi-
cient; not, whether it contradicts or is inconsistent with some
other. We think therefore the court erred in overruling the
demurrer to this fifth defense. It does not follow, even if
the alleged agreement should turn out to be void on this
account, that the plaintiff would be remediless, or that the
defendants could without liability appropriate the fruits of
her labor. If they have taken her property they are respon-
sible for all damages she may have sustained thereby. With
reference to the scope of this clause of the statute, and the
contracts included within it, see 2 Parsons on Contracts, 316,
and notes.

The pleading, process and journal entries are certified to
by the clerk, and any errors apparent in these are therefore
properly before us for examination; and the matters we have

thus far considered arise on the pleadings. The record, which is very voluminous, embracing some three hundred pages, contains also a case made. In this appears some of the testimony, all the instructions, and a part of the special findings, and motions subsequent to the verdict. It is earnestly insisted that the case made must be complete in itself, and include "so much of the proceedings and evidence, or other matters in the action as may be necessary to present the errors complained of," and that from the testimony and instructions alone, without the pleadings, it is impossible to affirm error. As the examination already made compels us to order a reversal we shall not consider the question thus raised, nor the various errors claimed to exist in this case. We shall content ourselves with laying down certain principles and deciding certain matters which may assist in the subsequent trial of the case. And first, we consider the petition sufficient. It presents facts which if true entitle the plaintiff to relief. Before one is competent as an expert to testify as to the value of the manuscript alleged to have been taken by defendants he must show that he is a publisher, or familiar with the publication of books, and the values of manuscripts like the one in question. The measure of damages for breach of the contract as shown in the petition would be one-half the value of the manuscript at the time it was taken by defendants. There is no allegation of any delay in the preparation caused by the defendants. It is perhaps unnecessary to proceed further in this direction.

The judgment of the district court will be reversed, and the case remanded for further proceedings.

All the Justices concurring.

—The case being remanded to the district court, and the order of reversal entered, the plaintiff, Mrs. *Kelley*, on leave filed a reply to the fifth defense stated in the answer. The substance of this reply is stated in the opinion, *infra*. The defendants demurred to the reply. The case was heard on this demurrer at the March Term 1873 of the district court. The

demurrer was overruled. A motion was also made by defendants to dissolve the attachment unless plaintiff should give an undertaking to support the same, on the ground that defendants had, since the issuance and service thereof, become residents of this state. The motion was overruled and denied, and from the orders overruling the demurrer and denying the motion to dissolve the attachment defendants *Larimer* and *Larimer* appeal, and bring the case here on error for review. The case was heard here, on this second appeal, at the JULY TERM, 1873.

*L. W. Keplinger*, for plaintiffs in error:

1. The court erred in overruling demurrer to the reply. Said reply shows defendants' cause of action to be barred either by the statute of frauds or the statute of limitations. The reply alleges that the contract sued on was to be performed within one year, or it does not. If it does not, her cause of action is barred by the statute of frauds. If it does, her cause of action is barred by the statute of limitations.

The reply is composed of two distinct parts, which are entirely different in nature and design. The first is an attempt to evade the statute of frauds, while the second is exclusively devoted to an attempt to extricate the cause of action from the statute of limitations. So far as the questions raised by the fifth defense stated in the answer are concerned, our law divides all verbal contracts into two classes: first, those which are to be performed within one year; second, all other verbal contracts. The contract sued on must belong to one or the other of these two classes. There is no third class. It was to be performed within one year, or it was not. There is no obscure middle ground for it to occupy, nor can it be on one side the line for the purposes of the statute of frauds, and on the other for the purposes of the statue of limitations. If the first part of the reply saves the contract from the statute of frauds, it is simply and solely because it is equivalent, in legal effect, to an allegation that the contract *was to be performed* within one year, for there is no other defense known

to the law. If this reply be true, if the contract *was* "to be" performed within one year from December 1865, plaintiff's right of action for any possible breach of the contract sued on was barred by the statute of limitations long before this action was instituted. After the year expired, defendants were liable at any time within the period prescribed by the statute of limitations for any breach of the contract which had occurred prior to the expiration of the year, but the instant the year expired defendants' power to break the contract expired also. But the second part of the reply alleges a modification of the original contract which continued it in force until May 1869. This is impossible. The slightest effort of the parties to prolong the life of the contract by extending the time necessarily proved fatal. The first part of the reply temporarily rescues the cause of action from the statute of frauds, but strands it upon the statute of limitations. The second part of the reply extricates cause of action from the statute of limitations only to leave it hopelessly shipwrecked upon the statute of frauds. The channel between the statutes is too narrow for her craft.

2. The court erred in overruling the motion for a discharge of the order of attachment: 1st, Because the pleadings show no cause of action against the defendant; 2d, Because the grounds upon which the order was issued no longer exist. If the plaintiff persists in keeping defendants' property tied up for years after they have ceased to be non-residents, it is within the authority of the court to discharge the order of attachment, or compel plaintiff to give security, even in the absence of express statutory authority. Otherwise non-resident defendants might suffer irreparable damage at the hands of malicious and unprincipled plaintiffs, without the possibility of relief. A plaintiff might claim exorbitant damages, and attach every dollar's-worth of a defendant's property for the purpose of hampering him in his defense, and the forms of law and courts thus be made to subserve the ends of private animosity.

*W. A. Johnson,* for defendant in error:

1. The contract sued on, and set forth in the petition *was not, by its terms,* "not to be" performed within the space of one year from the making thereof; that is, the contract did not *in terms* stipulate and provide specifically for its performance at a specified time more than a year beyond the day on which it was made. Not so providing, the contract is valid. Where no definite time is fixed between the parties in which a contract is to be performed, the law presumes that it is to be done in a reasonable time; and if the labor necessary to complete a contract can be performed in one year it is not void as against the statute of frauds. A contract is not void under the statute of frauds unless it is a contract by the terms of the agreement, not to be performed within one year. Gen. Stat., ch. 43, § 6; .3 Pars. Con't., 35.

2. But for the purpose of this suit we claim that it makes no difference whether the agreement is in derogation of the statute of frauds or not. The plaintiff prepared the manuscript for her history as alleged, and the defendants took and appropriated the fruits of her labor, secretly and fraudulently, and without her knowledge or consent, and thereby greatly damaged her. They sought to make a profit from the experience and suffering as well as of the labor of the plaintiff; and they are answerable to her in damages. 3 G. Greene, 228.

3. Plaintiffs in error claim that the reply shows the cause of action to be barred either by the statute of frauds or the statute of limitations. The petition and the reply of the plaintiff below both show clearly that her cause of action accrued to her in May 1869, within the period prescribed by the statute of limitations.

4. The second error alleged by plaintiffs in error is that the court erred in overruling their motion for a discharge of the order of attachment. There was no error. The attachment was rightly sued out, and rightly levied on defendants' property. A change of domicile by a defendant cannot make that wrong which was right when done. The attachment

having properly issued and there being sufficient cause for attachment no subsequent act of the defendant other than payment of the debt or giving the undertaking as required by law will relieve his property from that liability.

The opinion of the court was delivered by

Brewer, J.: The defendant in error, Fanny Kelley, filed her petition in the district court of Allen county on the 26th of October 1870 against Sarah L. Larimer and William J. Larimer, the plaintiffs in error. A judgment rendered in her favor was reversed by this court in October 1872; (*ante,* pp. 298, 303.) The ground of reversal was error in sustaining a demurrer to the fifth defense stated in the answer. It appears by the record in this case that thereafter a reply was filed to this fifth defense, and a demurrer to that reply was overruled, and this ruling is one of the errors now complained of. The substance of the petition, and of said fifth defense, were fully stated in the opinion filed in the former case, and it will be unnecessary to repeat the statement here. It is enough to say, that the petition alleged the making of a contract in 1865 to mutually write and publish a book, and that in 1869 Mrs. Larimer carried off the manuscript then nearly completed, and published the book as her own production, and for her individual profit. The fifth defense stated in the answer alleged that this contract was *not to be,* and was not, performed within one year, and was in parol, and therefore void under the statute of frauds. The reply alleges that no definite time was fixed in said contract within which the manuscript was to be prepared, but that the same was to be prepared as speedily as possible, and that it could have been completed within one year with ordinary attention and labor; that the parties prosecuted the same from time to time, and treated it as a continuing contract, until May 1869, and that each party continued said contract in force by mutual agreement until May 1869; that the contract as set forth in the petition had been by mutual consent and agreement kept alive and in full force until May 1869, and was then well known

and understood by the parties to be the contract under which the book was to be published for their mutual benefit. Was the demurrer to the reply properly overruled? We think it clearly was. In 2 Parsons on Cont., 316, the rule is thus stated: "If the executory promise be capable of entire performance within one year it is not within this clause of the statute. The decision of the question does not seem to depend entirely upon the understanding or intention of the parties. They may contemplate as probable a much longer continuance of the contract, or a suspension of it and a revival after a longer period; it may in itself be liable to such continuance and revival, and it may in this way be protracted so far that it is not in fact performed within a year; but if, when made, it was in reality capable of a full and *bona fide* performance within the year, without the intervention of extraordinary circumstances, then it is to be considered as not within the statute." The reply clearly brings the contract within the rule thus laid down. Nor does the reply present any departure from the petition, or allege a new or modified contract, within the scope of the authorities cited by plaintiff in error. The contract as disclosed in the petition was apparently valid. The petition did not allege when it was to be performed, nor did the contract appear at all incapable of easy performance within one year. *Prima facie* then it was good. The answer plead the statute in *hæc verba*. A general denial in the reply would probably have been sufficient. Instead thereof the pleader alleges specifically that the contract was capable of performance within one year, and by agreement was to be performed as speedily as possible. If true, this overthrows and is a complete reply to the defense set up in the answer. The ruling of the district court on the demurrer must be sustained.

One other question is presented in the record. A motion was made to dissolve the attachment, or to require the plaintiff to give security. This motion was overruled. It is alleged that the court erred in this, 1st, because the pleadings show no

*5. Parol contracts; terms of, and performance of.*

*6. Pleading; statute of frauds.*

7. Attachment; cause of action against the defendant. This rea-
non-residents; son is disposed of by the decisions already made.
change of
domicile. In the former case of *Larimer v. Kelley* (ante, p.
303,) we decided that the petition was good, and we have now
decided that the reply is sufficient. The second ground for
discharging the attachment is, that the grounds upon which
the order of attachment was issued no longer exist. The
defendants were non-residents when the suit was commenced.
An order of attachment under those circumstances properly
issued without the giving of any undertaking. Code, Gen.
Stat., pp. 664, 665, §§ 190, 192. They have since become
residents, and upon that ground insist that the attachment
ought now to be discharged, or at least an undertaking required.
There is nothing in the statute authorizing any such action as
was asked. There is nowhere any intimation that the defend-
ants can by removing into the state after the commencement
of a suit, affect the lien of an attachment rightfully issued and
rightfully levied. We are referred to no authorities which
sanction such practice, and it does not appear to us to be con-
sonant with the spirit and purpose of the attachment law.
The attachment does not divest the defendants of title to their
property; it only enables the plaintiff to obtain security for
an anticipated judgment. And when that security has been
once properly acquired, we suppose it will remain until the
final disposition of the case, unless released under some express
provision of the statute.

These being the only questions in the record the judgment
will be affirmed.

All the Justices concurring.